1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                           EASTERN DISTRICT OF CALIFORNIA

8

9  RODRIGO FLORES,                          CASE NO. CV F 09-1529 LJO DLB

10                                          **ORDER ON MOTION FOR SUMMARY**
                          Plaintiff,        **JUDGMENT, OR IN THE ALTERNATIVE,**
11        vs.                               **SUMMARY ADJUDICATION**

12
   MERCED IRRIGATION DISTRICT,
13 DAN POPE, ROBERT BLUM,

14                        Defendants.
   _____/
15

16        By notice filed on September 15, 2010, Defendant Merced Irrigation District ("MID") seeks

17 summary judgment or in the alternative summary adjudication pursuant to Fed.R.Civ.P. 56 on plaintiff's

18 complaint.  Plaintiff Rodrigo Flores filed an opposition to the motion on October 15, 2010.  Defendant

19 filed a reply on November 1, 2010.[1]  Pursuant to Local Rule 230(g), this matter was submitted on the

20 pleadings without oral argument and the hearing was vacated.  Having considered the moving, the

21 opposition and the reply papers, as well as the Court's file, the Court issues the following order.[2]

22  _____

23        [1]While this motion was pending, plaintiff moved for relief from his "deemed admitted" Requests for Admissions.
   These Requests for Admissions served as an evidentiary basis for defendant's motion for summary judgment.  On November
24 23, 2010, the Magistrate Judge granted plaintiff leave to withdraw the deemed admitted Admissions.  As a result of the
   Magistrate Judge's order, this Court does not rely upon the Admissions in ruling upon this motion.
25
          [2] The parties have filed numerous objections to the evidence submitted by the opposing side. The court has not relied
26 on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment as
   to the claims, the Court found triable issues exist regarding the employment decisions. The Court has granted summary
27 judgment as to the statute of limitations because plaintiff failed to meet his burden under either claim, as explained in the body
   of the order.  To the extent that the court may have considered some of the disputed evidence in finding that triable issues
28 exist regarding the claims, the objections are OVERRULED.  Further, the court is not obligated to consider matters not

                                                1

**FACTUAL BACKGROUND**

Plaintiff Rodrigo Flores is a Hispanic male who has been employed by Defendant Merced Irrigation District ("MID") since June 1, 1993. Plaintiff alleges that he earned a B.S. degree in Business and an MBA at C.S.U. Stanislaus for the specific purpose of advancing within MID. Plaintiff alleges that despite his training, education and experience, MID has refused to promote him and kept him in a manual labor position. Plaintiff alleges he suffered discrimination at MID based upon his race, and retaliation after engaging in various protected activities.

The MID is a public entity which generates and sells electricity and distributes irrigation water to its customers. Defendant Dan Pope was MID's general manager from July 1, 2008 through August 1, 2009. Defendant Robert Blum was MID's director of administrative services from January 22, 1991, through his retirement, on May 14, 2010.

Plaintiff was initially hired as a temporary laborer in 1993 and became a permanent employee on January 29, 1999 when he was promoted to the position of night patrolman/utility man I. On February 1, 2004, plaintiff was promoted to the position of night patrolman/utility man II.

In 2005, plaintiff complained about unsafe working conditions and alleges he was retaliated against by management. Plaintiff was transferred to the Livingston office. He reported safety hazards such as mold, obstruction of fire exits, and other safety related complaints. After submitting his safety complaint to management, he was threatened that it would "be easy to get rid of him." His complaints were looked at by management but not addressed for months.

Plaintiff alleges he has been called derogatory names during the course of his employment. In 2005, a co-worker repeatedly called him a "wetback." He complained to his supervisors, but the person who called him names was not disciplined. Shortly after, plaintiff was transferred to the control room, where his supervisor was Veronica Cavazos and the manager was Mike Higgins. Plaintiff alleges that Veronica Cavazos was given special treatment from manager Mike Higgins. (Doc. 49, Opposition p. 7.) She was allowed to leave work early, come to work late, perform less work, among other things.

---

specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition must designate and reference specific triable facts. *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

Plaintiff argues there was a general gender preference of allowing female staff members privileges.

Plaintiff was denied another opportunity to interview for a promotion.  In March 2006, plaintiff applied for an Account Representative position but was not permitted to be interviewed.  (Doc. 49, Opposition p. 8.)

In May 2006, plaintiff was retaliated against by management for prior complaints.  Plaintiff alleges that he was wrongly suspended for 24 hours for following orders for the release of water.  (Doc. 49, Opposition p. 8.)  Plaintiff disputed the suspension as retaliation by individuals he had reported as using the word "wetback."  Plaintiff alleges the retaliation and discrimination continued against Plaintiff in other ways, as he was passed up for overtime opportunities and temporary promotions that he was entitled to, and which instead went to Eric Labuga, a Caucasian male.  Plaintiff complained to the Director of Administrative Services, Robert Blum, on June 26, 2006, and reiterated many of his complaints including being called "wetback" on numerous occasions, being passed over for the temporary DSO position, lost overtime opportunities, unwarranted suspension, and retaliation he was suffering for lodging his prior complaints.  He appealed to MID's Board of Directors on August, 1, 2006.  After the meeting, General Manger Garith Krause meet with him and told him that MID was not a good fit for him and he would not advance and should "move on."

In June 28, 2007, plaintiff applied for FMLA leave.  He took the leave on July 9, 2007, and when he returned, he was transferred from the office control room to the outside yard where he was assigned menial tasks such as pulling weeks and sweeping up the shop.  (Doc. 49, Opposition p. 10.)

On July 18, 2008, plaintiff applied for additional positions, the Business Development position and the Account Representative position.  Plaintiff was allowed to interview for the positions, but plaintiff alleges the positions were awarded to far less qualified Caucasian males.  The position of Account Representative was awarded to Marc Smith, a Caucasian male with no experience at MID and who had previously worked at a tomato company.  The position of Business Development was awarded to Kyle Ford, a Caucasian male who had not graduated from college. Plaintiff was told he was not awarded the positions because he is not a "team player."

In July 2009, plaintiff applied for a purchasing administrator position.  Later, MID withdrew the position and the position was never filled.

From the allegations, plaintiff alleges four instances of discriminatory acts:  (1) plaintiff's May 2006 suspension, (2) plaintiff's transfer to utility man II position upon his return from family leave on August 20, 2007, (3) non-selection for a sales representative positions on August 13, 2008, and (4) withdrawal of the purchasing administrator position in August 2009.  Plaintiff filed a charge with the EEOC on May 5, 2009.

Plaintiff alleges the following claims against defendant MID:

1)   Race & Gender Discrimination (Title VII);

2)   Race & Gender Discrimination (FEHA);

3)   Retaliation for Protected Activity (Title VII);

4)   Retaliation for Engaging in Protected Activity (FEHA);

5)   Failure to Prevent Discrimination and Harassment (FEHA);

6)   Race Discrimination - Civil Rights Act of 1866 (42 U.S. §1981, et seq.);

7)   Equal Protection - Civil Rights 42 U.S.C. §1983;

8)   Declaratory Relief.

## ANALYSIS AND DISCUSSION

**A.     Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law.  F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

1    To carry its burden of production on summary judgment/adjudication, a moving party "must

2    either produce evidence negating an essential element of the nonmoving party's claim or defense or

3    show that the nonmoving party does not have enough evidence of an essential element to carry its

4    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

5    F.3d 1099, 1102 (9th Cir. 2000). "[T]o carry its ultimate burden of persuasion on the motion, the moving

6    party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at

7    1102. "As to materiality, the substantive law will identify which facts are material.  Only disputes over

8    facts that might affect the outcome of the suit under the governing law will properly preclude the entry

9    of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

10    "If a moving party fails to carry its initial burden of production, the nonmoving party has no

11    obligation to produce anything, even if the nonmoving party would have the ultimate burden of

12    persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

13    "If, however, a moving party carries its burden of production, the nonmoving party must produce

14    evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103.  "If the nonmoving party fails

15    to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion

16    for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

17    106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for

18    discovery and upon motion, against a party who fails to make the showing sufficient to establish the

19    existence of an element essential to that party's case, and on which that party will bear the burden of

20    proof at trial.")

21    **B.      DFEH/EEOC Charge is Time-barred**

22    Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on May

23    5, 2009. In the Charge, plaintiff alleged he was discriminated against based upon his race and was

24    retaliated against for engaging in protected activities. (Doc. 39-15, Exh. 55 (EEOC Charge).)

25    Defendant MID argues that Plaintiff's claims under Title VII are time-barred.  MID argues that

26    the claims under Title VII are only actionable for the 180-day period prior to his filing the EEOC

27    complaint on May 5, 2009.  Defendant argues that any challenged employment acts occurring before 180

28    days of May 5, 2009 therefore are untimely.

1    Plaintiff argues that a 300-day limitations period, not the 180-day period, applies for his Title

2   VII claims.   He argues the EEOC and California Department of Fair Employment and Housing

3   ("DFEH") have a work share agreement in which the EEOC charge is "constructively filed" with both

4   agencies. (Doc 49, Opposition p. 17-18.)   Plaintiff argues, in that situation, where a plaintiff files a

5   claim with the EEOC, it is cross-filed and constructively received by the DFEH, and Title VII's 300-day

6   extension applies to all claims.  Plaintiff argues, therefore, he filed his complaint with the EEOC on May

7   5, 2009 and he is statutorily entitled to recover on acts within the 300 days preceding the May 5, 2009

8   file date.

9                    **1.    180-Day or 300-Day Limitation Period under Title VII**

10          Title VII establishes two potential time limitations periods within which a plaintiff must file an

11   administrative charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1); *MacDonald v. Grace Church*

12   *Seattle*, 457 F.3d 1079, 1081-1082 (9th Cir. 2006).  Generally, a Title VII plaintiff must file an

13   administrative charge with the EEOC within 180 days of the last act of discrimination.  *Id.*  However,

14   the limitations period is extended to 300 days if a plaintiff "has initially instituted proceedings with a

15   State or local agency." 42 U.S.C. § 2000e-5(e)(1).  Thus, if the plaintiff <u>first</u> institutes proceedings with

16   a "State or local agency with authority to grant or seek relief from such practice," the limitations period

17   is extended to 300 days.  *Id.*

18          Under Title VII, state agencies are authorized to investigate and enforce Title VII claims pursuant

19   to "work sharing agreements" with the EEOC.  42 U.S.C. §2000e-8(b); 29 C.F.R. §1626.10( c).  The

20   California DFEH and the EEOC have such a work share agreement.  *See E.E.O.C. v. Dinuba Medical*

21   *Clinic*, 222 F.3d 580, 585 (9th Cir. 2000) (Constructive filing is made possible by "worksharing

22   agreements," which designate the EEOC and the state agency each other's agents for the purpose of

23   receiving charges).  Charges filed with either the EEOC or the DFEH are deemed "constructively filed"

24   with the other.  29 CFR §1626.10( c); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175-76

25   (9th Cir. 1999).  These workshare agreements are intended to eliminate duplication of effort between the

26   agencies and to provide an efficient procedure for claimants to seek redress for their grievances.  *See*

27   *Laquaglia,* 186 F.3d at 1177.

28

                                                         6

1          **2.      Initially filing**

2          Defendant argues that the extended 300-days does not apply because plaintiff failed to "initially

3   file" with the DFEH.  Defendant argues that since plaintiff "initially filed" with the EEOC, and not with

4   the DFEH, the 180-day limitations period applies.

5          In the instant case, plaintiff first filed with the EEOC on May 5, 2009. The EEOC Charge was

6   then forwarded to the DFEH for processing and received on June 24, 2008.  (See Doc. 39-15, Exh. 56

7   and 57 (DFEH notice)). As this court noted in *Tumbling v. Merced Irrigation District*, CV-F-08-1801,

8   the statutory language would seem to mandate that the 180-day limitations apply because plaintiff "first

9   filed" with the EEOC, and not with the DFEH.  Pursuant to Title VII, the limitations period is extended

10  to 300-days if plaintiff first files with the DFEH.  42 U.S.C. § 2000e-5(e)(1).

11         Here, no party has cited controlling case authority which has resolved the limitations period

12  where the plaintiff "initially files" with the EEOC, in light of the workshare agreement.  MID relies

13  merely upon the statutory language. Yet, the statute does not address where the State and the EEOC have

14  a workshare agreement.  The authorities cited by the parties involve whether a plaintiff first filed a

15  DFEH complaint and whether the claims thus would be timely under Title VII.  For instance, in

16  *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172 (9th Cir.1999), the employee initially filed with

17  the state agency, after the statute had run on the state claims.  The Court held that the 300-day time limit

18  for filing the federal claims applied even when the employee missed the state's filing deadline. Indeed,

19  the court held that barring the federal claim, based on state procedural hurdles, would be "entirely at

20  odds with the purpose of the worksharing agreement and with Title VII."  *Id.* at 1177. *See Surrell v.*

21  *California Water Service Co.*, 518 F.3d 1097 (9th Cir. 2008) (plaintiff initially instituted proceedings

22  within the DFEH); *See Downs v. Dept. of Water and Power*, 58 Cal.App.4th 1093, 1097, 68 Cal.Rptr.2d

23  590 (1998) ("The EEOC and the DFEH each designated the other as its agent for receiving charges and

24  agreed to forward to the other agency copies of all charges potentially covered by the other agency's

25  statute").

26         As this Court also noted in *Tumbling v. Merced Irrigation District*, interpreting Title VII with

27  the longer, 300-days limitation period, in a State with a work-share agreement, fosters the remedial

28  scheme of Title VII and the liberal construction of the statute.  In enacting Title VII, Congress intended

the statute's procedural requirements to be liberally construed in order to remedy discrimination in the workplace and to preserve a claimant's federal remedies in discrimination suits. *See*, *e.g.*, *E.E.O.C. v. Commercial Office Prods.*, 486 U.S. 107, 124, 108 S.Ct. 1666 (1988) ("Title VII ... is a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process."); *accord Laquaglia*, 186 F.3d at 1177 (Prohibiting any remedy to claimants who file discrimination complaints with an appropriate state or federal agency within the 300-day deadline is entirely at odds with the purpose of the worksharing agreement and with Title VII).

For plaintiff's Title VII claims, the Court finds that the applicable limitations period is 300 days before the filing of the EEOC claims, not 180 days as argued by MID.   Based on plaintiff's filing with the EEOC, and the state work share agreement, the 300 days limitations period applies.   Therefore, acts preceding 300 days before the May 5, 2009 file date are barred under Title VII.[3]

## C.      Racial Discrimination in Failure to Promote/Demotion (Title VII, FEHA, §1981 and Equal Protection)

Defendants challenge the *prima facie* case on the four alleged discriminatory acts; (1) plaintiff's May 2006 suspension, (2) plaintiff's transfer to utility man II position upon his return from family leave on August 20, 2007, (3) non-selection for the sales representative positions on August 13, 2008, and (4) withdrawal of the purchasing administrator position in August 2009.   (Doc. 39. Moving papers p.18-19; Doc. 49, Opposition p. 20.) To the extent that any such acts occurred within the statute of limitations, the Court turns to these allegations.

### 1.      *McDonnell Douglas* Shifting Burden Framework

Title VII makes it an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race . . ." 42 U.S.C. §2000e et seq.   A plaintiff may show violation of Title VII by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment.   *Sischo-Nownejah v.*

---

[3] California Government Code §12960(d) provides a general one year limitations period to file a complaint with the California DFEH.  A four year statute of limitations applies to claims for discrimination under 42 U.S.C. §1981.  The Court has not been asked to address the statute of limitations under these statutes.

*Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991).  Here, plaintiff alleges he was intentionally discriminated on the basis of race.

A plaintiff may establish a *prima facie* case of discrimination by introducing evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094 (1981); *Sischo-Nownejah*, 934 F.2d at 1109. The evidence may be either direct or circumstantial, and the amount that must be produced to create a *prima facie* case is "very little." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *Sischo-Nownejah*, 934 F.2d at 1110-1111. A plaintiffs' Title VII claim is analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Claims under the FEHA for discrimination also follow the same burden-shifting analysis set forth in *McDonnell Douglas*.  *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 378, 100 Cal.Rptr.2d 352 (2000).  The *McDonnell Douglas* burden-shifting burdens of proof is also used in § 1981 race discrimination cases. *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004).

Under the burden-shifting analysis, plaintiffs must first establish a *prima facie* case of employment discrimination.  *Hawn v. Executive Jet Management, Inc.,* 615 F.3d 1151 (9th Cir. 2010). If plaintiff establishes a *prima facie* case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.*  If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination. *Id.*  The employer's proof of legitimate, nondiscriminatory reasons for its action dispels the inference of discrimination raised by plaintiff's *prima facie* case. The *McDonnell Douglas* framework "disappears," leaving plaintiff with the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff.  *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000).

**2.      Burden of Proof on *Prima Facie* Case**

In a failure to promote case, the specific elements of the *prima facie* case may be based on circumstantial evidence by showing: (1) plaintiff belongs to a protected class; (2) he applied for and was qualified for the position he was denied; (3) he was rejected despite his qualifications; and (4) the

1    employer filled the position with an employee not of plaintiff's class, or continued to consider other

2    applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff. *Dominguez-Curry*

3    *v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005); *see Breiner v. Nevada Dept. of*

4    *Corrections*, 610 F.3d 1202, 1208 (9th Cir. 2010) (denial of a single promotion opportunity is actionable

5    under Title VII).  At summary judgment, the degree of proof necessary to establish a *prima facie* case

6    is "minimal and does not even need to rise to the level of a preponderance of the evidence."

7    *Dominguez-Curry*, 424 F.3d at 1037.

8    **(A)    Account Representative and Business Development Positions - Employer**

9    **filled the position with an Employee not of plaintiff's Class**

10    MID challenges the fourth prong of the *prima facie* case.  MID argues that plaintiff's *prima facie*

11    case must fail because plaintiff cannot show that any of the failures to promote were the result of racially

12    discriminatory animus.

13    Here, Flores satisfied the fourth prong by showing that MID "filled the position with an

14    employee not of plaintiff's class." *Dominguez-Curry*, 424 F.3d at 1037.   Both the Account

15    Representative position and the Business Development position were filled by Caucasians.  Thus,

16    plaintiff has shown that MID filled the positions with employees not of plaintiff's race.

17    MID incorrectly argues plaintiff's burden on the *prima facie* case.  Plaintiff does not have to

18    show racial animus as part of the *prima facie* case.  (Doc. 39, Moving papers p.18-19.)  Plaintiff must

19    show the elements of the *prima facie* case as listed above.  This, plaintiff has done.  In a failure to

20    promote case, the fourth element of the *prima facie* case is shown by evidence that the employer filled

21    the position with an employee not of plaintiff's class.  Plaintiff presents evidence that the position of

22    Account Representative was awarded to Marc Smith, a Caucasian male.  (Doc. 39, Joint Statement Fact,

23    fact 40.) Plaintiff presents evidence that the position of Business Development was filled by Kyle Ford,

24    also a Caucasian.  Once plaintiff establishes a *prima facie* case, a presumption of discriminatory intent

25    arises.  *Dominguez-Curry,* 424 F.3d at 1037.

26    **(B)    August 2009 Withdrawal of Purchasing Administrator Position**

27    Plaintiff fails to carry his burden on the failure to promote him to the Purchasing Administrator

28    Position.  Defendant presents undisputed evidence that the position was withdrawn.  On August 12,

2009, the MID informed plaintiff that it had decided not to fill the purchasing administrator position. That position was in fact withdrawn by the MID prior to any interviews being conducted and was never filled. (Doc. 39, Undisputed Fact, fact 60). Plaintiff does not dispute that the Purchasing Administrator Position he applied for was withdrawn and never filled. Plaintiff does not argue or address that he is able to present a *prima facie* case for this position. Accordingly, summary adjudication is appropriate on the claims for failure to promote for this position.

### (C)   Transfer to Utilityman II on August 20, 2007

To the extent that this claim is not barred by the statute of limitations, plaintiff has not raised an issue of fact in the *prima facie* case that his transfer to Utilityman II was the result of racial discrimination. Plaintiff's evidence shows the transfer to Utilityman II was for retaliation for filing a FMLA leave request. The transfer occurred upon his return from FMLA leave. No evidence shows it was related to racial discrimination. This FMLA retaliation claim may be cognizable under the FMLA, but is not cognizable under Title VII.

It is unlawful for an employer "to interfere with, restrain, or deny the exercise of ... any right" under the FMLA. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1). An employer is prohibited from interfering with an eligible employee's right to take either an FMLA leave or discriminating or retaliating against an employee for taking such a leave. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133, fn. 7 (9th Cir. 2003) (where the employer takes adverse employment action (e.g., demotion or discharge) against an employee for taking FMLA leave is "interference" claims under 29 U.S.C. § 2615(a)(1).)

The facts introduced by plaintiff show that he was retaliated against for FMLA leave, and the retaliation upon his return from leave was related to his leave. Plaintiff presents evidence that he was the first male to take FMLA leave. He was told he "he should be careful" with what he did, which plaintiff took as a threat for his job should he take the leave. (Doc. 49-2, Plaintiff's Disputed facts, facts 133-143.) None of his facts indicates any indicia or inference of racial motivation.

Plaintiff fails to raise an issue of fact that his transfer to Utilityman II was for racially discriminatory reasons. Accordingly, summary adjudication is appropriate on the claims for the transfer to this position.

1                    **(D)**     **May 2006 Suspension**

2          To the extent that this claim is not barred by the statute of limitations, defendant argues that

3  plaintiff cannot show a *prima facie* case that his suspension was motivated by racially discriminatory

4  animus.  (Doc. 39, Moving paper p. 16; Doc. 50, Exh. 27 (May 2006 Notice of Employee Reprimand).)

5  Plaintiff argues that his suspension was the result of his Caucasian supervisors, Jim Kaiser's and Bill

6  Otterson's, false allegations that plaintiff had mishandled a customer complaint regarding release of

7  water. (Doc. 49, Opposition p. 26.)  Plaintiff had previously complained that Otterson and Kaiser had

8  called him "Spick" and "Wetback."  He argues that they recommended his suspension which was

9  endorsed by Michael Higgins.  Mr. Higgins, himself, had threatened plaintiff when he complained about

10  unsafe working conditions and for failing to protect an inter-office relationship Higgins was having.

11  (Doc. 49, Opposition p. 26.)

12          Plaintiff may establish a *prima facie* case (in a case other than a failure to promote case) based

13  on circumstantial evidence by showing: (1) that he is a member of a protected class; (2) that he was

14  qualified for his position and performing the job satisfactorily; (3) that he experienced adverse

15  employment actions; and (4) that "similarly situated individuals outside [his] protected class were treated

16  more favorably, or other circumstances surrounding the adverse employment action give rise to an

17  inference of discrimination."[4]  *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1156 (9th Cir.

18  2010); *see also Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

19          Here, plaintiff has failed to raise an issue of fact as to the fourth prong of the prima facie case

20  for the May 2006 suspension.  Plaintiff's evidence fails to identify that other employees outside of his

21  protected class were treated differently. Plaintiff does not point to evidence of policy or procedures

22  related to discipline for such conduct, or any other evidence.  Rather, plaintiff argues that MID "has

23  never" issued such a harsh punishment, but fails to point to evidence to support his conclusion.  (Doc.

24  50, Flores Decl. 38.)

25          Further, plaintiff failed to raise an inference of discrimination related to his suspension.  Plaintiff

26

27          [4] The proof required in the *prima facie* case depends on the type of claim asserted.  *McDonnell Douglas*, 411 U.S.

28  at 802, 93 S.Ct. at 1824, fn. 13.  "The facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from [plaintiff] is not necessarily applicable in every aspect to differing factual situations." *Id.*

does not point to any evidence that his race motivated Mr. Higgins to suspend him. Plaintiff argues that Mr. Otterson and Mr. Kaiser influenced Mr. Higgins, but it is undisputed that Mr. Higgins was the person to authorize the suspension. Plaintiff does not present evidence that Mr. Higgins was racially motivated. Plaintiff points to evidence that Mr. Higgins retaliated against him for complaining about unsafe working conditions or because of Mr. Higgins' personal relationship. But this evidence does not infer that the suspension was in any part related to Plaintiff's race. It is undisputed that a customer called in for a release of water for irrigation but that plaintiff, as the night monitor, did not release the water. Plaintiff argues that he was instructed not to do so by Bill Otterson. Nonetheless, an incident regarding a customer's request happened, which spurred the discipline. Plaintiff does not introduce any evidence that Mr. Higgins was motivated by any racial bias. Defendant in fact introduces evidence that Mr. Higgins later recommended plaintiff's promotion to the control room monitor position. (Doc. 39-2, Undisputed Facts, fact 22.) Thus, plaintiff has failed to establish an inference that his suspension was racially motivated and summary adjudication is appropriate on the claims for suspension.

### 3. Articulated Legitimate Nondiscriminatory Reason

Since plaintiff can establish a *prima facie* case on some of the discriminatory acts, defendant argues the next step in the *McDonnell Douglas* burden shifting analysis: Defendant argues that it articulates a legitimate non-discriminatory reasons for his non-selection. Defendant argues that plaintiff was not selected for the positions because he did not have experience in the related fields, that he was less qualified, that he did not interview well, and that the panel was not motivated by discrimination.[5] MID argues that plaintiff's May 2006 suspension was the result of a customer complaint as to how plaintiff handled the customer's request.

MID has articulated a non-discriminatory reason for its treatment of plaintiff. Accordingly, MID has met its burden of articulating a nondiscriminatory reason.

### 4. Plaintiffs' Argument of Pretext

Because defendant rebutted the presumption of discrimination, the burden shifts back to plaintiff to establish that MID's stated reasons for the adverse employment action was pretext for unlawful

---

[5] As plaintiff correctly notes, the bulk of defendant's position is premised upon the "deemed admitted" admissions which have now been withdrawn and are of no evidentiary value.

discrimination. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996).  Plaintiff may establish "pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) (citing *Godwin v. Hung Wesson, Inc.*, 150 F.3d 1217,1220-21 (9th Cir. 1998)).  Plaintiff must provide "specific, substantial evidence" that the reasons given were a pretext for discrimination. *Bradley*, 104 F.3d at 270.  In addition, Plaintiff must establish that there was a causal connection between his protected status and the adverse employment action.  *Mixon v. Fair Employment and Housing Com.*, 192 Cal. App. 3d 1306, 1317 (1987).

To oppose this motion, plaintiff must show that the "claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First National Bank of Arizona*, 391 U.S. at 290.  "A disparate treatment plaintiff can survive summary judgment without producing any evidence beyond that constituting his *prima facie* case, if that evidence raises a general issue of material fact regarding the truth of the employer's proffered reasons." *Chuang*, 225 F.3d at 1127 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).  If Plaintiff demonstrates through specific evidence that a genuine issue of material fact exists, defendants' summary judgment motion must be denied.  In a Fed. R. Civ. P. 56 motion, however, this Court does not resolve factual issues.  *Chuang*, 225 F.3d at 1124 (ultimate question of employment discrimination is conducted most appropriately by a factfinder, not on summary judgment).

### (A)    Account Representative and Business Development Positions

Here, the Court finds that plaintiff produced some direct evidence as to his discrimination claims.  There is direct evidence of possible racial animus.  For instance, racially derogatory terms were used by coworkers and used to refer to plaintiff in particular.  Plaintiff has been referred to as "wetback." *Chuang*, 225 F.3d at 1128 (egregious and bigoted insult is direct evidence of discriminatory animus).  Thus, plaintiff has offered some direct evidence of a possible "culture" of racial animus.  "With direct evidence, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Chuang*, 225 F.3d 1115, 1128 (9th Cir. 2000).

14

1   Further, plaintiff has presented indirect evidence that MID's proffered reasons for non-selecting

2   plaintiff are not worthy of credence.[6]   Plaintiff argues that Account Representative position and the

3   Business Development position were awarded to two Caucasians who were far less qualified than

4   plaintiff.  Plaintiff has an M.B.A. while the other applicants did not have advance degrees. (Doc. 49-2,

5   Plaintiffs Disputed facts, fact 150.)  Plaintiff presents evidence that the positions were under the

6   supervision of Jem Brown, whom plaintiff attributes derogatory, racial comments.[7]  Plaintiff alleges that

7   he had been, over the number of years, called a wetback and other derogatory terms for which he

8   routinely complained to management and others.  Plaintiff argues that it was common knowledge that

9   he complained and that a reasonable inference that the interview panel had knowledge that he

10  complained.  Plaintiff presents some evidence that the interview possess was not wholly objective.  For

11  instance, plaintiff presents evidence that the interview panel was not knowledgeable about the positions,

12  and the questions posed during the interview were irrelevant to the job functions.  Plaintiff  was told he

13  did not get the positions because he was not "a team player" which plaintiff argues is attributable to his

14  complaints about racial discrimination.[8]

15      Considering the totality of the selection and evaluation process, and the race of the selected

16  candidates, the Court cannot conclude that Plaintiff has failed to raised a question of fact.  Plaintiff has

17  presented indirect evidence that MID's proffered reasons for not selecting plaintiff are not worthy of

18  credence and that he was non-selected based upon a racial basis.[9]

19

20

21      [6] This finding of a factual dispute does not alter the Court's ruling that the 300-day statute of limitations bars claims
    which occurred prior to 300 days before the EEOC Charge was filed under Title VII.

22

23      [7] MID objects to this evidence on the grounds, among others, that plaintiff lacks personal knowledge to state that
    "Both of these positions were in the electrical department of MID, which was managed by Jem Brown." (Doc. 50-1, Exh.
    1, Flores  Decl. ¶65.)  However, as a long term employee of MID and one who applied for these positions, there is sufficient

24  foundational basis, for purposes of this motion, for the statement.

25      [8] Defendant objects to this evidence as hearsay (Fed.R.Evid. 802), but plaintiff does not introduce it for the truth
    of the matter asserted.

26

27      [9] MID argues that several members of the interview selection panel are likewise Hispanic and therefore plaintiff
    could not have been discriminated against on the basis of race. (Doc. 39, Moving paper p.19.) The Court rejects this position
    as supported in law and fact.  A triable issue of fact exists as to whether members of the same race may be motivated to act

28  on impermissible racial grounds.

### (B)   May 2006 Suspension

While the Court has found that plaintiff failed to present a *prima facie* case on this discriminatory act, the Court would also find that plaintiff failed to rebut MID's legitimate reason for his suspension. Plaintiff must provide "specific, substantial evidence" that the reasons given were a pretext for discrimination. Plaintiff's evidence is not substantial or specific. There is no evidence that Mr. Higgins had any racial animus against Plaintiff. Plaintiff speculates that Mr. Otterson and Mr. Kaiser influenced Mr. Higgins to suspend him. Speculation is not specific of substantial evidence of a racially motivated adverse employment action.

### D.   Failure to Prevent Discrimination and Harassment

Government Code Section 12940(k) provides that it is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." The parties acknowledge that this claim can only survive if there is a viable claim of discrimination under the FEHA. (See Doc. 39-1, Moving papers p. 20; Doc. 49, Opposition p. 27.)   Since the Court has found questions of fact as to certain discriminatory acts, summary adjudication on this claim will be denied.

### E.   Retaliation Claim

Plaintiff claims that defendant violated the anti-retaliation provisions of Title VII and the California FEHA in retaliating against him for complaining about racial discrimination.  These statutes prohibit employers from taking adverse actions against employees who complain about discrimination in the work place. Title VII provides that it is an:

> unlawful employment practice for an employer to discriminate  against any of his employees or applicants for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, . . . 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation under Title VII, "[t]he plaintiff must show (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse employment decision." *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1514 (9th Cir.1989); *see Flait v. N. Am. Watch Corp.*, 3 Cal.App.4th 467, 476, 4 Cal.Rptr.2d 522 (1992)).

1    The legal standard for a retaliation claim is the same under Title VII and the FEHA. *Surrel v.*

2   *California Water Serv. Co.*, 518 F.3d 1097, 1107 (9th Cir. 2008). Under the burden-shifting scheme of

3   Title VII and the FEHA, after the plaintiff establishes a *prima facie* case of retaliation, the burden of

4   production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse

5   employment action. *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284

6   (9th Cir. 2001).   If the employer rebuts the inference of retaliation, the burden of production shifts back

7   to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation.

8   *Winarto,* 274 F.3d at 1284.   Pretext may be shown either (1) directly by persuading the jury that a

9   discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the

10   employer's proffered explanation is unworthy of credence.  *Winarto,* 274 F.3d at 1284.   To establish

11   pretext, "very little" direct evidence of discriminatory motive is sufficient, but if circumstantial evidence

12   is offered, such evidence has to be "specific" and "substantial."  *Id.*

13    Defendant argues that plaintiff cannot show a *prima facie* case of protected activity.  Defendant

14   also argues that the EEOC charge plaintiff filed failed to allege retaliation and therefore, plaintiff has

15   failed to exhaust his administrative remedies.  In his opposition, plaintiff argues that he engaged in the

16   following protected activity (Doc. 49, Opposition p.28):

17    -   in 1999, complained of being called a "wet back" and "Spick' by supervisors.

18    -   in 2005, complained that timing preference was being given on a promotional exam

19        being given to a white Caucasian male.

20    -   in July 2005, complained about unsafe working conditions.

21    -   August 28, 2005, plaintiff complained that a senior employee continuously called him

22        a "wetback."

23    -   June 2006, complained about being called racist names and unfair work environment.

24    -   August 1, 2006, complained about unfair treatment to the MID Board.

25    -   August 2006, complained about not being given opportunities to advance or interviews

26        for positions.

27    -   March 20, 2007, complained to supervisors about gender discrimination and privileges

28        to females who flirt with male supervisors.

17

1   -   August 2007 complained regarding retaliation and discrimination.

2   Plaintiff argues that MID's non-retaliatory reasons for not selecting plaintiff are false and pretextual.

3   **1.   Like and Reasonably Related to Administrative Charge**

4   MID argues that Plaintiff cannot pursue retaliation for being called derogatory names because

5   his administrative charge did not mention this specific conduct.  Plaintiff argues that his complaints are

6   "like and reasonably related to" the allegations in the EEOC complaint such that he exhausted his

7   administrative remedies.[10]

8   The administrative exhaustion requirement is satisfied if the allegations of the civil action are

9   within the scope of the EEOC charge.  Thus, the judicial complaint may encompass any discrimination

10   "like and reasonably related to" the allegations of the EEOC charge. *EEOC v. Farmer Bros. Co.*, 31 F.3d

11   891, 899 (9th Cir. 1994).  Administrative charges are liberally construed.  *Sosa v. Hiraoka*, 920 F.2d

12   1451 (9th Cir. 1990).

13   In plaintiff's charge of "Discrimination/Retaliation," he alleges he has was not promoted "on the

14   basis of race and retaliation."  (Doc. 39, Administrative Charge Exh. 55.)  Plaintiff claims he was

15   discriminated against in the promotional opportunities and retaliated against because of a prior

16   discrimination complaint.  Plaintiff's EEOC charge states that he did not get the promotional

17   opportunities because he was told he was not a "team player," which plaintiff alleged in the EEOC

18   charge was because of his prior history of filing discrimination charges.  (Doc. 39, Administrative

19   Charge Exh. 55 p. 3 of 5.)

20   Whether plaintiff was retaliated against in the promotional opportunities because of previous

21   complaints that he was "called names" is reasonably related to the EEOC charge.  The crux of plaintiff's

22   claim is that he was denied the promotions because he had a history of complaining and opposing

23   discriminatory practices in the workplace.

24   The Court cannot rule as a matter of law that plaintiff was not retaliated against for making

25   numerous complaints of discrimination or racial bias.  From a review of the motion and opposition, it

26

27   [10] While the parties argue whether the content of the administrative charge covered "name calling", the alleged

28   incidents are outside the scope of the statute of limitations.  As argued above, the 300 day limitations period applies under title VII and for the FEHA, the 1 year limitations applies.

18

is undisputed that plaintiff complained about various things, comments, and situations related to his employment throughout his tenure.  Some of the complaints were objections to racial stereotypes he encountered.  Some were not.  It is undisputed that management was aware of his complaints, because he made some complaints directly to management, some to employees, and some to the MID Board.  For instance, after he was not selected for the account representative position,  he was told by one of the panelist that he was not selected because he was "not a team player."  Plaintiff argues the only way he was not a team player is because of the various discrimination complaints he made.  Plaintiff argues that he was being punished for his prior complaints.  The Court cannot find as a matter of law that his complaints did not result in retaliation.  Plaintiff has raised a question of fact of retaliation.

**F.** **Personal Liability of the Individual Defendants Robert Blum and Dan Pope**

Plaintiff alleges in the Sixth and Seventh Causes of action that defendants Robert Blum and Dan Pope are individually liable for violation of sections 1981 and 1983 for race discrimination.  The Sixth cause of action is for Race Discrimination under 42 U.S.C. §1981.  The Seventh Cause of Action is for violation of Equal Protection pursuant to 42 U.S.C. §1983.

**1.** **Summary of Plaintiff's argument**

Plaintiff argues that both individuals were "personally involved and discriminated against plaintiff."  (Doc. 49, Opposition p.30.)  Plaintiff argues Dan Pope was the General Manager when plaintiff was denied promotion and was entrusted to approve "all proposed appointment and removals of subordinate employees by all Department Heads."  He failed to oversee, uphold and maintain equality in hiring.

Plaintiff argues that Robert Blum is the Director of Administrative Services since 1990.  Plaintiff argues that he reported complaints of discrimination to Robert Blum and that Mr. Blum did not investigate these complaints, did nothing to stop discrimination and told plaintiff he is causing problems and it could be easy to get rid of plaintiff.  (Doc. 49, Opposition p. 31.)

**2.** **Personal Involvement Requirement for Supervisor Liability**

A supervisory official may be liable only if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Redman v. County of San Diego*, 942 F.2d 1435,

1  1446-47 (9th Cir.1991)), *cert. denied,* 502 U.S. 1074 (1992); *Hansen v. Black,* 885 F.2d 642, 646 (9th

2  Cir.1989) (same).  Supervisors can be held liable for (a) their own culpable action or inaction in the

3  training, supervision, or control of subordinates; (b) their acquiescence in the constitutional deprivation

4  of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the

5  rights of others. *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

6        Under no circumstances, however, is there *respondeat superior* liability under §1983; that is,

7  there is no liability under §1983 solely because one is responsible for the actions or omissions of another.

8  *Redman v. County of San Diego*, 942 F.2d at 1446.  A supervisor therefore generally "is only liable for

9  constitutional violations of his subordinates if the supervisor participated in or directed the violations,

10  or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

11  1989).

12        The court concludes that there is no evidence that these defendants personally acted with intent

13  to discriminate against the plaintiff based on his race. *Barren v. Harrington*, 152 F.3d 1193, 1194-95

14  (9th Cir.1998). Race is a suspect class for the purposes of an equal protection claim. *N.A.A.C.P., Los*

15  *Angeles Branch v. Jones*, 131, F.3d 1317, 1321 (9th Cir.1997). Discriminatory intent "implies that the

16  decision maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not

17  merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Massachusetts*

18  *v. Feeney*, 442 U.S. 256, 279 (1979).

19        For defendant Dan Pope, plaintiff relies solely upon Mr. Pope's position as the basis for his

20  liability.  As the General Manager, he has ultimate responsibility for the conduct at MID.  Plaintiff does

21  not point to specific conduct or any conduct which infers discriminatory treatment by Mr. Pope.  It is

22  undisputed that Mr. Pope was the General Manager only from July 1, 2008 to August 1, 2009.  Plaintiff

23  does not point to specific conduct by Dan Pope during this time frame which was discriminatory.  Mr.

24  Pope's role as the General Manager, and as the ultimate supervisor, is legally insufficient to establish

25  liability.  He cannot be liable merely because he holds a specific position of authority.

26        For defendant Robert Blum, plaintiff argues several incidents which plaintiff attributes to racially

27  discriminatory acts:

28        -        Mr. Blum tells plaintiff it would be "easy to get rid of him" when plaintiff

20

1    complains of unsafe working conditions.

2    -    Mr. Blum fails to investigate plaintiff's claims that he was called a "wetback."

3    -    Mr. Blum takes plaintiff to lunch and tells him plaintiff should "move on."

4    -    Mr. Blum threatens plaintiff's job before plaintiff takes the FMLA leave.

5    -    After demotion to Utilityman II, Mr. Blum said he had warned plaintiff that "he was

6         going to get his."

7    -    Mr. Blum failed to comply with procedures and recommendations in a 1990 Grand Jury

8         report.  (Doc. 49, Opposition p. 31.)

9         Plaintiff's evidence fails to show that Mr. Blum had personal involvement in any of the alleged

10   discriminatory acts: (1) plaintiff's May 2006 suspension, (2) plaintiff's transfer to utility man II position

11   upon his return from family leave on August 20, 2007, (3) non-selection for a sales representative

12   positions on August 13, 2008, and (4) withdrawal of the purchasing administrator position in August

13   2009.  Plaintiff's evidence does not show that Mr. Blum was involved in any of the decisions related to

14   plaintiff's employment.  While Mr. Blum is the Director of Administrative Services and Director of

15   Human Resources, plaintiff has not shown that in his position, he is responsible for promotional

16   decisions.  Indeed, plaintiff's list of items of alleged wrongful conduct fail to implicate plaintiff's race.

17   For instance, two of the incidents relate to plaintiff's FMLA which is conduct not cognizable under

18   §1983 or §1981.  Plaintiff's evidence does not show Mr. Blum's personal involvement in any of the

19   alleged discrimination acts.  Likewise, Mr. Blum cannot be liable merely because he holds a specific

20   position of authority.

21   **G.    Injunctive and Declaratory relief**

22        Defendant argues plaintiff is not entitled to equitable relief.  Defendant argues it already

23   maintains a policy against discrimination.  Plaintiff cannot offer any evidence showing that it is the

24   MID's position that treating minorities less favorably than whites is somehow lawful.

25        Both Title VII and the FEHA provide for equitable remedies. Title VII explicitly authorizes

26   courts to "enjoin the [employer] from engaging in an unlawful employment practice, and order such

27   affirmative action as may be appropriate."  42 U.S.C. § 2000e–5(g). "Once intentional discrimination

28   in a particular employment decision is shown ... the disadvantaged applicant should be awarded the

position retroactively unless the defendant shows 'by clear and convincing evidence that even in the absence of discrimination the rejected applicant would not have been selected for the position.' " *League of United Latin American Citizens (LULAC), Monterey Chapter 2055 v. City of Salinas Fire Dept.*, 654 F.2d 557, 559 (9th Cir. 1981) (internal quotes omitted) (retroactive promotion appropriate remedy where discrimination was cause of fireman's failure to be promoted, and City failed to prove he would not have obtained position even absent discrimination).  Upon finding a Title VII or FEHA violation, the court has a "duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372 (1975).  Courts may order employers to take certain affirmative steps (mandatory injunction) to remedy past unlawful employment practices. However, mandatory injunctions may be harder to obtain than injunctions prohibiting behavior. *See Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

Here, plaintiff may pursue equitable remedies.  If plaintiff prevails at trial, he may obtain certain equitable remedies.  Accordingly, the request for adjudication will be denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, MID's motion as follows:

- GRANTS the motion for summary adjudication on the first and third claims for relief under Title VII as to discriminatory conduct which occurred more than 300 days before the filing of the May 5, 2009 EEOC Charge;

- DENIES, in part, and GRANTS, in part, the motion for summary adjudication on the first and second causes of action under Title VII and the FEHA, as more fully set forth in the order;

- DENIES the motion for summary judgment on the third and fourth causes of action for Retaliation;

- DENIES, in part, and GRANTS, in part, the motion for summary adjudication on the fifth cause of action under the FEHA, as more fully set forth in the order;

- DENIES, in part, and GRANTS, in part, the motion for summary adjudication on the

1    sixth and seventh causes of action under 42 U.S.C. §1981 and Equal Protection, as more

2    fully set forth in the order;

3    -    GRANTS the motion for summary judgment as to Defendant Dan Pope;

4    -    GRANTS the motion for summary judgment as to Defendant Robert Blum;

5    -    DENIES the motion for summary adjudication on the claims for equitable relief.

6    IT IS SO ORDERED.

7    **Dated:    December 9, 2010**              /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE

23